UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENTURA MENDOZA,<br><br>Plaintiff,<br><br>v.<br><br>MOVEMENT MORTGAGE, LLC,<br><br>Defendant. | No.  2:24-cv-03479-DAD-CSK<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND THIS ACTION TO THE SACRAMENTO COUNTY SUPERIOR COURT AND DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AS MOOT<br><br>(Doc. Nos. 9, 14) |

This matter is before the court on defendant's motion to compel arbitration and plaintiff's motion to remand this action to the Sacramento County Superior Court.  (Doc. Nos. 9, 14.)  On January 2, 2025, the pending motions were taken under submission on the papers.  (Doc. No. 15.)  For the reasons explained below, the pending motion to remand will be granted.  Defendant's motion to compel arbitration will be denied as moot in light of this order.

## BACKGROUND

On October 28, 2024, plaintiff filed a complaint in Sacramento County Superior Court initiating this action, asserting two claims against defendant for civil penalties pursuant to California Labor Code § 2699 ("the California Private Attorneys General Act" or "PAGA").

/////

1    (Doc. No. 1-4 at 1, 6–10.)  Plaintiff also seeks the award of attorneys' fees pursuant to California

2    Labor Code § 2699(g).  (*Id.* at 9.)

3          Defendant removed this action to this federal court on the basis of diversity jurisdiction on

4    December 13, 2024 pursuant to 28 U.S.C. §§ 1332 and 1441(b).  (Doc. No. 1.)  In its notice of

5    removal, defendant calculated the PAGA penalties attributable to plaintiff to be $121,808.75.  (*Id.*

6    at ¶¶ 24, 26.)  Defendant argues that "[a]ssuming plaintiff's counsel seeks fees in the

7    neighborhood of 25% of the civil penalties at issue (at least $121,808.75)," the "addition of

8    attorneys' fees would place an amount of $30,452.19 in controversy."  (*Id.* at ¶ 35.)  Additionally,

9    defendant estimates that there are 179 other aggrieved employees besides plaintiff and that the

10    PAGA penalties attributable to these other aggrieved employees total $378,900.  (*Id.* at ¶¶ 31,

11    32.)

12          On December 20, 2024, defendant filed its motion to compel arbitration.  (Doc. No. 9.)

13    Plaintiff filed his motion to remand on December 31, 2024.  (Doc. No. 14.)  Each party filed its

14    respective opposition on January 14, 2025 and respective reply thereto on January 21, 2025

15    pursuant to the briefing schedule on the pending motions set by the court's January 2, 2025

16    minute order (Doc. No. 15).  (Doc. Nos. 17, 18, 19, 20.)  The pending motions were taken under

17    submission on the papers.

18                                       **LEGAL STANDARD**

19          A suit filed in state court may be removed to federal court if the federal court would have

20    had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  Removal is proper when a case

21    originally filed in state court presents a federal question or where there is diversity of citizenship

22    among the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331,

23    1332(a).

24          "If at any time before final judgment it appears that the district court lacks subject matter

25    jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  "The removal statute is strictly

26    construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to

27    the party invoking the statute."  *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir.

28    2004) (citation omitted); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d

1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper.").  If there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court.  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1118 (9th Cir. 2004).

A party's notice of removal must contain "a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure," and a "statement 'short and plain' need not contain evidentiary submissions."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83–84 (2014); *see also Ramirez-Duenas v. VF Outdoor, LLC*, No. 1:17-cv-00161-AWI-SAB, 2017 WL 1437595, at *2 (E.D. Cal. Apr. 24, 2017) ("The notice of removal may rely on the allegations of the complaint and need not be accompanied by any extrinsic evidence.").

The party asserting diversity jurisdiction bears the burden of proving by a preponderance of the evidence—that is, that it is "more likely than not"—that the amount in controversy exceeds $75,000.  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability."  *Lewis v. Verizon Commc'ns Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  "[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."  *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018).  "In calculating the amount in controversy, a court must assume that the allegations in the complaint are true and that a jury will return a verdict for plaintiffs on all claims alleged."  *Page v. Luxottica Retail N. Am.*, No. 2:13-cv-01333-MCE-KJN, 2015 WL 966201, at *2 (E.D. Cal. Mar. 4, 2015); *accord Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012).[1]  Moreover, "a court must include [actual and] future attorneys' fees recoverable by statute or contract when assessing whether the

/////

---

[1]  Citation to the unpublished Ninth Circuit opinions cited throughout this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    amount-in-controversy requirement is met." *Fritsch v. Swift Trans. Co. of Ariz., LLC*, 899 F.3d

2    785, 794 (9th Cir. 2018).

3                                                     **ANALYSIS**

4             The court first considers plaintiff's motion to remand and, specifically, whether the

5    amount in controversy requirement for diversity jurisdiction is met here.  Because the court will

6    conclude it is not, and because plaintiff's motion to remand this action will be granted on that

7    basis, the court does not consider plaintiff's arguments regarding the purported lack of complete

8    diversity in this action.[2]

9             As an initial matter, it appears that the parties now agree that the amount in controversy is

10   determined using only the PAGA penalties attributable to plaintiff and not the PAGA penalties

11   attributable to other aggrieved employees.  In its notice of removal, defendant initially argued that

12   the PAGA penalties attributable to other aggrieved employees amounted to at least $378,900 and

13   that this figure satisfied the amount in controversy requirement.  (Doc. No. 1 at ¶¶ 33–34.)  In his

14   motion to remand, plaintiff only advances arguments regarding the PAGA penalties attributable

15   to him and does not discuss whether the PAGA penalties attributable to other aggrieved

16   employees may satisfy the amount in controversy requirement.  (*See* Doc. No. 14.)  Nor does

17   defendant argue in its opposition that the aggrieved employees' penalties suffice for diversity

18   jurisdiction.  (*See* Doc. No. 17.)  In reply, plaintiff notes that defendant "appears to have

19   abandoned its argument" in this regard.  (Doc. No. 20 at 3.)  Indeed, the court notes that the Ninth

20   Circuit has squarely held that only the PAGA penalties attributable to plaintiff may be considered

21   in calculating the amount in controversy.  *See Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118,

22   1122 (9th Cir. 2013) ("There is no dispute that Urbino's individual potential recovery would not

23   meet the $75,000 threshold.  Rather, the issue is whether the penalties recoverable on behalf of *all*

24   aggrieved employees may be considered . . . .  [Here,] diversity jurisdiction does not lie because

25   their claims cannot be aggregated.").

26   /////

27   ────────────────────

28   [2]  Because plaintiff's motion to remand will be granted, defendant's motion to compel arbitration
     will be denied as moot in light of this order.

                                                           4

1    **A.      Whether to Consider Plaintiff's Claims Asserted in Another Action**

2              Defendant argues in opposition to the pending motion that the court may consider

3    plaintiff's claims asserted against defendant in another action pending before the undersigned.

4    (Doc. No. 18 at 7–10.)  Specifically, on October 3, 2024, plaintiff filed a complaint initiating an

5    action in Placer County Superior Court, asserting various individual wage and hour claims on his

6    own behalf against defendant.  *See Mendoza v. Movement Mortg., LLC* ("*Mendoza I*"), No. 2:24-

7    cv-03371-DAD-CSK, Compl., Doc. No. 1-3 (E.D. Cal.).  Defendant argues that plaintiff's

8    individual claims asserted in *Mendoza I* are "nearly identical" to his PAGA claims asserted in this

9    action and that plaintiff's conduct violates the claim splitting doctrine.  (Doc. No. 18 at 8–9.)

10   Consequently, defendant argues, "it is appropriate to consider plaintiff's individual claims alleged

11   in *Mendoza I* in determining the amount plaintiff has placed in controversy."  (*Id.* at 9.)  In reply,

12   plaintiff points out that "this is a PAGA action for civil penalties only," that he asserts no claims

13   for damages in this action unlike in *Mendoza I*, and that defendant "has not presented a single

14   case where a court has done what defendant asks the court to do here" and considered claims in a

15   separate action to determine the amount in controversy in this case.  (Doc. No. 20 at 8–9.)

16             The court finds defendant's arguments on this point to be unpersuasive.  The claim-

17   splitting doctrine bars duplicative actions under certain circumstances.  *See Adams v. Cal. Dep't*

18   *of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled in part on other grounds by Taylor*

19   *v. Sturgell*, 553 U.S. 880 (2008) ("[T]he district court may exercise its discretion to dismiss a

20   duplicative later-filed action, to stay that action pending resolution of the previously filed action,

21   to enjoin the parties from proceeding with it, or to consolidate both actions."); *Pollok v. Vanguard*

22   *Fiduciary Tr. Co.*, 803 F. App'x 67, 68 (9th Cir. 2020) (affirming the district court's dismissal of

23   the later-filed diversity action on the basis of "improper claim splitting").  Defendant has not cited

24   any authority suggesting that the claim-splitting doctrine is relevant to the calculation of the

25   amount in controversy for the purposes of determining diversity jurisdiction, nor has the court

26   located any such authority.

27             To the contrary, the only authority that is even somewhat relevant undercuts the argument

28   advanced by defendant here.  *See Madison v. U.S. Bancorp*, No. 14-cv-04934-EMC, 2015 WL

5

355984, at *4–5 (N.D. Cal. Jan. 27, 2015) ("USBI argues that because Madison's PAGA claims are predicated on alleged violations of [the California Labor Code] . . . the amount in controversy requirement is met.  USBI is mistaken.  . . .  Madison's complaint pleads only two causes of action, both brought under PAGA, and both requesting only civil penalties. . . .  [R]egardless of the merits of Defendants' claim splitting argument, one thing remains certain—even if Madison can recover $100,000 in unpaid wages in a separate action, she cannot recover those wages here. Thus, any amount of unpaid wages owed Madison is irrelevant when determining whether the amount in controversy exceeds $75,000."); *cf. Coffin v. Magellan HRSC, Inc.*, No. 19-cv-02047-BAS-NLS, 2020 WL 773255, at *2–6 (S.D. Cal. Feb. 18, 2020) (refusing to consider whether to consolidate the plaintiff's Labor Code claims in a separate action with the plaintiff's PAGA action before first determining whether the court had subject matter jurisdiction over the plaintiff's PAGA action, then determining the amount in controversy by reference to the plaintiff's claims in the PAGA action, and finally remanding that action to state court).  The court will therefore consider only plaintiff's claims brought in this action in determining the amount in controversy.

**B.     The Appropriate Share of PAGA Penalties**

"[C]ivil penalties recovered by aggrieved employees shall be distributed as follows:  65 percent to the Labor and Workforce Development Agency [("LWDA")] . . . and 35 percent to the aggrieved employees."  Cal. Lab. Code § 2699(m).  Plaintiff argues that, even if defendant's calculation of $121,808.75 in PAGA penalties is correct,[3] plaintiff's 35% share of those penalties is only $42,633.06.  (Doc. No. 14-1 at 5–6.)  Plaintiff urges the court to follow the "growing number of courts that have held the LWDA's share cannot be aggregated with the aggrieved employee's share for purposes of determining the amount in controversy."  (Doc. No. 14-1 at 5) (quoting *Hesselink v. Am. Family Life Assurance Co. of Columbus*, No. 20-cv-02051-CJC-DFM,

---

[3]  Plaintiff argues that defendant erred in several ways in computing the figure above.  (*See* Doc. No. 14-1 at 6–8.)  Because the court concludes that the amount in controversy in this action is below $75,000 even if defendant's calculations are correct, and that plaintiff's motion to remand must be granted on that basis, the court will assume for the purposes of the pending motions that the figure of $121,808.75 referenced above is correct.

2020 WL 7768711, at *3 (C.D. Cal. Dec. 30, 2020)).  Defendant "recognizes the split in authority among the California district courts" on this issue and requests that the court join the "numerous courts that have concluded that [the full amount of PAGA penalties] form part of the amount in controversy."  (Doc. No. 18 at 11.)  Plaintiff notes in reply that many courts in this district have concluded that the LWDA's share of penalties should not be included in the amount in controversy.  (Doc. No. 20 at 5) (citing *Moberly v. FedEx Corp.*, No. 2:18-cv-00393-KJM-AC, 2019 WL 927295, at *2–3 (E.D. Cal. Feb. 26, 2019); *Escobar v. Capstone Logistics, LLC*, No. 2:20-cv-02501-WBS-JDP, 2021 WL 913174, at *3 (E.D. Cal. Mar. 10, 2021); *Willis v. Xerox Bus. Servs., LLC*, No. 1:13-cv-01353-LJO-JLT, 2013 WL 6053831, at *8–9 (E.D. Cal. Nov. 15, 2013)).

As acknowledged above, the Ninth Circuit in its decision in *Urbino* determined that the claims of all aggrieved employees could not be aggregated to meet the amount in controversy requirement.  726 F.3d at 1122.  In so finding, the court noted the following:

> The traditional rule is that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement.  In *Snyder v. Harris*, the Supreme Court applied that rule to representative actions, holding that the claims of class members can be aggregated to meet the jurisdictional amount requirement only when they "unite to enforce a single title or right in which they have a common and undivided interest."  To determine the character of that interest, courts look to "the source of plaintiffs' claims.  If the claims are derived from rights that they hold in group status, then the claims are common and undivided.  If not, the claims are separate and distinct."  But simply because claims may have "questions of fact and law common to the group" does not mean they have a common and undivided interest.  Only where . . . the defendant "owes an obligation to the group of plaintiffs as a group and not to the individuals severally," will a common and undivided interest exist.

*Id.* (internal citations omitted).  "Federal courts have had some difficulty determining how a PAGA suit fits within this typology."  *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1044 (N.D. Cal. 2014).

The court concludes in line with the majority of courts in this district and in the Ninth Circuit that only plaintiff's share of the PAGA penalties is to be considered in calculating the amount in controversy.  In its decision in *Urbino*, the Ninth Circuit noted the importance of the

7

1   presence of "an injury that can be redressed without the involvement of other employees. *Troy*

2   *Bank* [*v. G.A. Whitehead & Co.*, 222 U.S. 39, 41 (1911)] (explaining that an interest is common

3   and undivided when 'neither [party] can enforce [the claim] in the absence of the other')." *Id.*

4   (second and third alterations in original). As other courts have noted, "PAGA 'permits either the

5   LWDA or the aggrieved employees to act independently to enforce the Labor Code.'" *Ogaz v.*

6   *Honeywell Int'l, Inc.*, No. 21-cv-00740-JFW-KK, 2021 WL 2822400, at *2 (C.D. Cal. July 7,

7   2021) (quoting *Patel*, 58 F. Supp. 3d at 1048). This weighs against a finding that plaintiff and the

8   LWDA hold a common and undivided interest in the PAGA penalties. Moreover, many courts

9   have concluded that language in Ninth Circuit decisions suggests that, because the state of

10  California should not be considered for purposes of diversity of citizenship, "[t]he LWDA's share

11  of the PAGA penalties associated with plaintiff's claims should therefore not be included in

12  calculating the amount in controversy." *Butt v. 9W Halo W. Opco, L.P.*, No. 2:22-cv-02012-

13  WBS-AC, 2023 WL 196472, at *2 (E.D. Cal. Jan. 17, 2023); *see also Urbino*, 726 F.3d at 1122–

14  23 ("To the extent Plaintiff can—and does—assert anything but his individual interest, however,

15  we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies

16  the requirements of federal diversity jurisdiction. The state, as the real party in interest, is not a

17  'citizen' for diversity purposes."); *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 n.1 (9th

18  Cir. 2020) ("We were also unpersuaded [in *Urbino*] that the PAGA action could satisfy the

19  complete diversity element because the State of California was the real party in interest and was

20  not a citizen."); *Sloan v. IHG Mgmt. (Md.) LLC*, No. 19-cv-00021-DMG-JC, 2019 WL 1111191,

21  at *2 (C.D. Cal. Mar. 11, 2019) ("Including LWDA's share in the calculation would come into

22  tension with *Urbino*'s language that California is not a 'citizen' for diversity purposes."). Finally,

23  because "[t]he removal statute is strictly construed against removal jurisdiction," *Dynegy*, 375

24  F.3d at 838, the court finds that defendant has failed to meet its burden here. *See Evers v. La-Z-*

25  *Boy Inc.*, No. 22-cv-00578-LL-BLM, 2022 WL 4379311, at *3 (S.D. Cal. Sept. 22, 2022)

26  ("Moreover, the strong presumption against removal jurisdiction weighs in favor of remand. The

27  /////

28  /////

8

1   Court will therefore only consider Plaintiff's 25% portion[4] of the PAGA claims for the amount

2   in controversy.") (internal citations omitted); *Coffin*, 2020 WL 773255, at *6 ("[A]s one court

3   pointed out, 'since the matter is unclear, the Court finds that the presumption against diversity

4   jurisdiction also weighs in favor of remand.'  The Court agrees and therefore will only consider

5   Plaintiff's portion of the 25% that aggrieved employees may recover.").

6         Consequently, the court includes in calculating the amount in controversy here only 35%

7   of the $121,808.75 in PAGA penalties proposed by defendant, which amounts to $42,633.06.  *See*

8   *Martinez v. Sunnova Energy Corp.*, Nos. 2:24-cv-06346-MRA-MAR, 2:24-cv-09960-MRA-

9   MAR, 2025 WL 732350, at *5 (C.D. Cal. Mar. 7, 2025) ("Thus, the Court considers only

10  Plaintiff's 35 percent pro-rata share of penalties under the reformed PAGA."); *Clark v. QG*

11  *Printing II, LLC*, No. 1:18-cv-00899-AWI-EPG, 2021 WL 38180, at *6 (E.D. Cal. Jan. 5, 2021)

12  ("[S]ince *Urbino*, numerous district courts have held that California's share of PAGA penalties

13  should be excluded from the jurisdictional amount in controversy calculations because:

14  (i) California, as the real party in interest on PAGA claims, is not a 'citizen' for diversity

15  purposes; and (ii) because the state's interest in a PAGA claim is distinct from an employee's

16  interest in a PAGA claim.  The Court agrees with the reasoning in these cases.") (internal

17  citations omitted).

18  **C.    Attorneys' Fees**

19        Because plaintiff's share of the PAGA penalties amounts to $42,633.06, remand is

20  necessary unless the remainder of the required amount in controversy—i.e., $32,366.94—can be

21  supported by an award of attorneys' fees.

22        Defendant argues in its notice of removal that applying a benchmark figure of 25% of the

23  total civil penalties at issue in this case—$121,808.75—results in $30,452.19 in attorneys' fees to

24  /////

---

25  [4]  For PAGA actions brought prior to June 19, 2024, plaintiffs received 25% of the penalties and

26  the LWDA received 75%.  *See Stewart v. Quest Diagnostics Clinical Lab'ys, Inc.*, No. 19-cv-
    02043-AGS-DDL, 2025 WL 1456922, at *6 (S.D. Cal. May 21, 2025) ("[T]he 2024 amendments,

27  including the new 65%-35% apportionment requirement, apply only to 'civil action[s] brought on
    or after June 19, 2024' . . . .") (quoting Cal. Lab. Code § 2699(v)(1)).  Because this action was

28  commenced after June 19, 2024, the 35% apportionment applies.

1    be included in the amount in controversy.[5]  (Doc. No. 1 at ¶ 35.)  However, even if the court

2    accepts this figure proposed by defendant, the amount in controversy would remain under

3    $75,000 and remand would still be required.[6]  *See Coffin*, 2020 WL 773255, at *6 ("Even

4    assuming, as some district courts have, a benchmark fee award of 25%, and even using 25% of

5    Defendant's highest calculation [of the total PAGA penalties] ($42,100), this would only double

6    the amount in controversy from $10,525 to $21,050.  This falls far below the diversity jurisdiction

7    threshold.").  The court further notes that many district courts have applied the 25% benchmark

8    for attorneys' fees to the plaintiffs' share of the PAGA penalties, rather than including the LWDA

9    share as defendant proposes.  *See, e.g.*, *Evers*, 2022 WL 4379311, at *3–4 ("The Court will

10   therefore only consider Plaintiff's 25% portion of the PAGA claims for the amount in

11   controversy.  As such, even accepting Defendants' highest calculation, which combines penalties

12   for all alleged Labor Code violations ($63,250.00), Defendants' maximum PAGA exposure

13   would be $15,812.50. . . .  [I]n adding together the amount in controversy calculated above

14   ($15,812.50), and the benchmark attorneys' fees of 25% ($3,953.13), the total amount in

15   controversy is $19,765.63."); *Martinez*, 2025 WL 732350, at *6 (calculating the plaintiff's "Pro-

16   Rata Share (35%)" of PAGA penalties to be $61,188.75 and then calculating the "Attorneys' Fees

17   (25%)" to be $15,297.12.  Applying this method, the amount in controversy here falls even

18   further below the $75,000 threshold.[7]  Because the amount in controversy is insufficient in either

19   case, the court need not determine which method is appropriately applied here.

20   /////

21

22   [5]  Defendant also argues in its opposition that the court should consider the attorneys' fees that
     plaintiff may be awarded on his individual claims in *Mendoza I* in calculating the amount in

23   controversy for this action.  (*See* Doc. No. 18 at 13) ("Individual wage and hour cases that reach
     verdict routinely garner over $100,000 in attorneys' fees.").  The court declines to consider any

24   potential award of attorneys' fees in the separate *Mendoza I* action for the same reasons fully
     discussed above.

25

26   [6]  Plaintiff's 35% share of the PAGA penalties ($42,633.06) plus defendant's proposed attorneys'
     fees ($30,452.19) equals $73,085.25.

27

28   [7]  The amount in controversy would be plaintiff's 35% share of the PAGA penalties ($42,633.06),
     plus attorneys' fees in the amount of 25% of that share ($10,658.27), and would total $53,291.33.

1    Accordingly, plaintiff's motion to remand this action to state court will be granted.  *See*

2    *Higginbotham v. S. E. Emp. Leasing Servs., Inc*, No. 2:20-cv-00575-KJM-DB, 2020 WL

3    5535421, at *5 (E.D. Cal. Sept. 15, 2020) ("As discussed above, the LWDA's 75 percent share of

4    this is not included in the ultimate amount in controversy calculation, so the amount is reduced to

5    the 25 percent pro rata share of the plaintiffs, or $2,012.50. . . .  [A]ttorneys' fees are reduced to

6    the pro-rata share attributable to the named plaintiffs . . . .  With this proportion, plaintiffs' share

7    of attorneys' fees could not reasonably combine with their share of the civil penalties to reach the

8    amount in controversy requirement. . . .  [T]he court grants plaintiff's motion to remand.").

## CONCLUSION

10    For the reasons discussed above:

11    1.    Plaintiff's motion to remand this action to the Sacramento County Superior Court

12        (Doc. No. 14) is GRANTED;

13    2.    Defendant's motion to compel arbitration (Doc. No. 9) is DENIED as moot in light

14        of this order; and

15    3.    The Clerk of the Court is directed to close this case.

16    IT IS SO ORDERED.

17    Dated:    **June 10, 2025**

18                            DALE A. DROZD
                            UNITED STATES DISTRICT JUDGE

11